O'ROURKE v. PATTISON et al.

(Circuit Court of Appeals. Second Circuit. March 28, 1916.)

No. 228.

TOWAGE ⊂⊃15(2)—LIABILITY FOR LOSS OF TOW—IMPROPER MOORING.

The loss of a canal boat laden with coal, while lying alongside a bulkhead where she had been left by a tug, by settling with the falling tide on a rock, which was a well-known obstruction, *held*, on the evidence, not due to any fault of the tug, but to the fact that after she was left the master of the canal boat moved her along to a position over the rock.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 34–36; Dec. Dig. ⊂⊃15(2).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Patrick C. O'Rourke, owner of the canal boat Grace, against Gardner Pattison and others. Decree for respondents, and libelant appeals. Affirmed.

W. H. K. Davey, of New York City, for appellant.

Park & Mattison, of New York City (H. E. Mattison and N. Zabriskie, both of New York City, of counsel), for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. March 4, 1912, the libelant's canal boat Grace, laden with coal, was landed by the tug Ticeline alongside the bulkhead on the east side of Blackwell's Island at a place known as the Workhouse Dock. There is at one point at this berth a ledge of submerged rock shelving out from the bulkhead, as was well known to the master of the tug and to tug masters generally. The boat was made fast with one line from a post on the lower corner of the bulkhead to a cleat amidships and another line running aft from a cleat on the side of the boat near the stern to a cleat on the bulkhead. The tide was nearly high-water flood. The boat drew 8½ feet, the rock is 6½ feet below the surface at low water, and the tide rises and falls 5 feet. After the tide had turned, and had fallen from 2 to 3 feet, the boat grounded on the rock and became a total loss.

Pattison and Bowns were the charterers of the boat, and employed

the tug Ticeline, which was owned by John Rugge, Jr., and Howard B. Hague. The libelant filed this libel against Pattison & Bowns and against Rugge and Hague to recover his damages, on the ground that the respondents had landed his boat at an unsafe and improper berth, as they well knew. The master and crew of the tug testified that the boat was landed with her bow projecting beyond the bulkhead for the express purpose of leaving the rock a safe distance astern. They are corroborated in this by the master of a boat which was lying at the Metropolitan Hospital dock just above the rock, and the probabilities are all against the tug leaving the boat exposed to a perfectly well-known danger.

On the other hand, the master of the boat says that the tug laid her bow flush with the south end of the bulkhead which would bring her stern over the rock. Nevin, the master of the boat lying just north of the Grace, says that after the tug left the master of the Grace let go the spring line from the post on the lower end of the bulkhead, so that the boat ran astern on the flood tide, which being near high water would be running slowly, and then made fast. This would bring the stern of the boat over the rock.

There are printed in the record some affidavits used upon a motion made before the District Judge for leave to take further proofs, which he denied. We have not read them, because they are not testimony, and the matter was one of discretion, and because we denied a motion to take further proofs in this court on the same subject. Judge Hough dismissed the libel, expressing his entire disbelief in the testimony of the master of the boat. This finding, and the clear weight of the testimony, and the probabilities are all with the respondents; but it is ably argued by the proctor for the libelant that, notwithstanding this, he should have a decree, because respondents' account is contrary to the laws of nature, and therefore cannot be believed. The point made is that, if the master of the boat had permitted her to drift back, as stated, her stern, when the tide began to ebb, would have swung out from the bulkhead, and could not possibly have settled on the rock. This would be so if he did not tauten his stern line after he had let the boat drift back. On this point there is no testimony one way or the other, but it is quite clear that any boatman would have known the necessity of doing this. We prefer to assume that this proper precaution was taken to finding that the story of so many witnesses is false.

The decree is affirmed.